CAKE (NEW YORK WIRE RAILING CO. v.). See Case No. 10,217.

CALAIS STEAMBOAT CO. (SCUDDER v.). See Cases Nos. 12,565 and 12,566.

CALBRAITH (SEARIGHT v.). See Case No. 12,585.

---

## Case No. 2,295.

### CALBREATH v. GRACY.

[1 Wash. C. C. 198.][1]

Circuit Court, D. Pennsylvania. Oct. Term, 1804.

#### NEW TRIAL.

Although the omission of the court to charge the jury, on important questions of law, involved in the case, is not in itself a reason for granting a new trial; yet the court will exercise a discretion; and, if they think the justice of the case will be promoted, they will grant it.

[Cited in Allen v. Blunt, Case No. 217.]

This was an action on a policy of insurance on goods on board the Martha, at and from Havana to Carthagena, and at and from Carthagena, to Philadelphia, with leave to touch at Laguira, and one or more ports on the Spanish Main, and the West India Islands; warranted American property, proof whereof to be made in any of the courts of the United States, if questioned. The vessel was captured by a French privateer, on her voyage to Carthagena; and recaptured by a British privateer, in May 1795; carried into Providence; and libelled as enemies' property. A claim was put in by Hernandez, the supercargo and consignee of the cargo; who stated himself also to be the captain; and in his answer, he swore that the cargo belonged to him, a subject of the king of Spain; the vessel to Juan de Santa Maria, also a subject of the king of Spain; and he claimed restitution, upon the footing of a treaty lately concluded between England and Spain. Sixty days were allowed the party to produce the treaty, which not being done, the vessel and cargo were condemned, as enemies' property. The condemnation took place on the 25th of August, 1795. To prove the loss, and that the property was American, the plaintiffs produced the protest of Captain Bonner, dated 10th July, 1795, and the deposition of William M'Connel; who stated the capture, recapture, and condemnation, as above; and also that he understood that the cargo was the property of the plaintiffs, I. Wykoff and George Meade, American citizens. The bills of lading signed by Bonner, the real captain, stated the cargo to be shipped on account of Calbreath & Co. and George Meade, to be delivered at Carthagena to the order of Hernandez, who was on board as consignee and supercargo, and interposed the claims as above mentioned. The proceed-

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

ings in the court of vice admiralty were relied upon at the trial, to prove; that whether the property was American or not, the condemnation had resulted from the claim put in by the agent of the assured, in stating the property to belong to subjects of Spain. It appeared that a charter party had been executed, at the Havana, before the vessel sailed, by which Hernandez was stated to be one fourth concerned in the cargo. Notice of the capture was given to the underwriters, on the 14th July, but no demand of payment or offer to abandon. The demand for a total loss was made of the underwriters in December last; but no abandonment was offered. The cause was tried before the late circuit court; no charge was given by the court, and a verdict was given for the plaintiff. A rule having been obtained to show cause why a new trial should not be granted, the cause came on to be argued at this court.

Rawle and Chauncey, in favour of the motion, contended; that it was incumbent on the plaintiffs to prove an abandonment, which, in all cases where the loss was total, was essentially necessary, because, wherever there was a possibility of saving any thing, that chance should be transferred to the underwriters. That in this case, though the capture was in May, and the condemnation took place in August, yet the first notice the assurers had was in December; whereas had the plaintiff abandoned at once, the assurers might have prevented the condemnation, or at least appealed after it had passed. They cited Parker, Exch. 143, 171, 172; 2 C. Rob. Adm. 1. 2d. That it appeared clearly, that the property was not American, but Spanish. The true construction of the warranty is, that the property was American, and should continue so during the voyage. 7 Term R. 705. If warranted American property, she must have all the necessary papers to entitle her to the privileges of an American vessel. 8 Term R. 196, 230. Vessel warranted Danish—she must not lose her neutral character, during the voyage, by the conduct of those on board. Being warranted Danish, is, in effect, being warranted neutral. 8 Term R. 444; Parker. Exch. 359, 369. This vessel, it appears, had on board Spanish papers. She and the cargo were claimed, by the agent of the assured, as Spanish property; and it appears, by the charter party, that a Spaniard was part owner of the cargo. These circumstances lost to her, her neutral character, and were as much a breach of the warranty; as if she had not carried the papers necessary to support that character. 2 Wood. 442.

Ingersoll and Heatley, against the motion, contended; that the plaintiff may sue for a total, and recover for a partial loss; and the only difference between abandoning and not abandoning, is; that, in the latter case, the plaintiff can only recover such loss as he may be able to prove; but, in the former, he recovers the whole value, although the loss might only be partial. They cited 2 Burrows, 683; Parker, Exch. 162. As to the second point. It was a matter of perfect notoriety, and, therefore, must have been known to the underwriters; that, to carry on a trade to the Spanish colonies, which is interdicted by that government, you must carry Spanish papers, a Spanish supercargo, who must appear to have an interest in the cargo. This is the course of the trade, and was, or ought to have been known to the underwriters; of course, the conduct of the assured was consistent with the warranty. And, although no evidence of this sort was given at the trial, yet the counsel for the assured relied upon the knowledge of the jury, as to that fact.

WASHINGTON, Circuit Justice. Important points of law were involved in this case, and the court ought to have charged the jury upon them. Though their not having done so, is no reason per se, for granting a new trial; yet, there is reason to apprehend, that, under the circumstances of the case, justice has not been done. As the case now appears to me, the verdict does not seem to consist with legal principles; although I mean not to give any decided opinion. I think, the ends of justice will be most likely to be attained, by granting a new trial. Rule made absolute.

[NOTE. For the new trial, see next following case, No. 2,296.]